# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF GEORGIA
# SAVANNAH DIVISION

| | | |
|---|---|---|
| JOHN RAUBACK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV418-167 |
| | ) | |
| CITY OF SAVANNAH, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## **ORDER**

Before the Court is defendants'[1] response, doc. 66, to this Court's prior order, doc. 65, requiring the supplementation of a privilege log and plaintiff's objection to the prior order, doc. 68.[2] After review of the supplemental privilege log provided by defendants, the Court concludes that they have supported their claim to the privilege. To the extent this Order concludes the proceedings relating to the discovery dispute before the undersigned, it supersedes this Court's prior order. As a result, plaintiff

---

[1] To the extent the Court refers to "defendants" in this Order, it is referring to the Savannah Airport Commission and Greg Kelly.

[2] Plaintiffs filed "Objections to the Non-Final Report and Recommendation of the Magistrate Judge." Doc. 68. However, plaintiff is operating under a misapprehension. This Court's order was not a "Report and Recommendation" subject to the *de novo* review of the District Court. Rather it was, as defendants point out, it was an order on a pretrial matter which is subject only to review for clear error. Doc. 70 at 5 (*citing* Fed. R. Civ. P. 72(a)).

may—if he so desires—file an amended objection to this Court's order within 14 days from the date of this order for review by the assigned District Judge. Any amended objections should be complete and may not incorporate any prior objections by reference.

I. **The Privilege Log Dispute**

This Court previously addressed a series of discovery disputes between the parties. Doc. 65. It determined that defendants' privilege log was inadequate to support its assertions of attorney-client privilege and work-product protection. *Id.* at 20-28. Accordingly, the Court ordered defendants to show cause why they should not be required to produce the documents for which they failed to establish a viable privilege. *Id.* In response, defendants supplemented their privilege log, and indicated to the Court that they had produced additional documents which—after review— they conceded were not privileged. Docs. 66, 66-1. Plaintiff objects that the Court should still require the disclosure of the withheld documents listed in the privilege log. Doc. 69. The Court now reviews that privilege log and determines that defendants have established their assertions of privilege, with one exception.

As the Court has stated previously, "[t]he party invoking the attorney-client privilege bears the burden of proving that (1) an attorney-

client relationship existed, (2) that a confidential communication was made to or from (3) an attorney who had been retained for the purpose of securing legal advice or assistance." *Mead*, 250 F. Supp. 3d at 1391. However, the attorney-client privilege does not protect *every* communication between an attorney and his client. *See In re Vioxx Prods. Liab. Litig.,* 501 F. Supp. 2d 789, 799 n. 15 (E.D. La. 2007) ("Neither the existence of an attorney-client relationship nor the mere exchange of information with an attorney make out a presumptive claim.") (*quoting* PAUL R. RICE, 2 ATTORNEY-CLIENT PRIVILEGE IN THE UNITED STATES, § 11:9, pp. 78-79 (Thomson West 2d ed. 1999)). Moreover, whether a meeting between a client and attorney occurred and the general subject matter of that meeting is likewise not privileged. *In re Grand Jury Proceedings*, 689 F.2d 1351, 1352-52 (11th Cir. 1983) (allowing subpoena for "records of dates, places or times of meetings and communications"); *Ramseur v. Chase Manhattan Bank*, 865 F.2d 460, 467 (2d Cir. 1989) ("fact and date of the consultation" between an attorney and a client is not privileged); *Burton v. R.J. Reynolds Tobacco Co.*, 170 F.R.D. 481, 484-85 (D. Kan 1997) ("The subject matter of meetings with an attorney, the persons present, the location of the meetings, or the persons arranging the meetings are not protected by the privilege.").

Privilege logs, like responses in discovery, demand more than a mere assertion of a privilege. Failure to provide sufficient information to verify the privilege asserted can be grounds for waiver. *See, e.g., Harper v. Auto-Owners Ins. Co.*, 138 F.R.D. 655, 664 (S.D. Ind. 1991) (requiring log to list, "for each separate document, the authors and their capacities, the recipients (including copy recipients) and their capacities, the subject matter of the document, the purpose for its production, and a detailed, specific explanation of why the document is privileged or immune from discovery"); *Resolution Trust Corp. v. Diamond*, 137 F.R.D. 634, 641-42 (S.D.N.Y. 1991) (index including date, addressor, addressee, document type, and grounds for nondisclosure found insufficient). As in discovery responses "[b]lanket and general objections do not provide sufficient detail about the documents . . . and [defendant] was obligated to provide a privilege log or a more detailed response to the request for production to satisfy Rule 26 and 34's requirements." *Universal City Dev. Partners, Ltd. v. Ride & Show Eng'g, Inc.*, 230 F.R.D. 688, 695 (M.D. Fla. 2005). District courts regularly require "a detailed privilege log stating the basis of the claimed privilege for each document in question, together with an accompanying explanatory affidavit from counsel." *Mead*, 250 F. Supp. 3d at 1393; *see also Nat'l Union Fire Ins. Co. v. Midland Bancor, Inc.*, 159

4

F.R.D. 562, 567 (D. Kan. 1994) (general allegation of privilege is insufficient; if a privilege is not specified and substantiated, it may be lost) (citations omitted).

The privilege logs defendants originally provided were insufficient because they 1) asserted a blanket privilege rather than providing sufficient information to verify the privilege, 2) failed to explain why certain communications, which did not appear to contain privileged legal conversations, were privileged, or 3) withheld emails sent to non-attorneys (*i.e.,* communications which could not have been privileged because of the participation of non-attorney third parties). The supplemental privilege log defendants provided rectified those defects. It includes, among other details, information on the purpose of several disputed emails, *see e.g.,* D021538[3] (explaining that the email contained legal advice regarding harassment training), D043068 (explaining that email solicited legal advice on correspondence from opposing counsel), D056111 (explaining that email includes details of potential settlement and preparation for negotiations). In short, the amended privilege log contains more than enough information to establish the privilege.

---

[3] For ease of use, the Court uses the numbers used in the supplemental privilege log. Doc. 66-1.

Plaintiff argues that the entirety of the new privilege log is unsworn and therefore insufficient to support defendants' claims based on language in *United States v. Davita*, 301 F.R.D. 676 (N.D. Ga. 2014) (noting than a claim of privilege cannot be sustained purely on the basis of unsworn information). Doc. 69 at 3. While *Davita* espouses the standard that a privilege log should be underpinned by evidentiary support, the Court notes that an affidavit alone is not required. *See, e.g., United States ex rel. Bibby v. Wells Fargo Bank, N.A.*, 165 F. Supp. 3d 1319, 1324 (N.D. Ga. 2015) (noting that burden may be satisfied through privilege log, affidavits, "and by any of the traditional ways in which proof is produced in pretrial proceedings."). However, *Davita* is inapposite to the case at bar. Defendant's counsel did provide an affidavit in support of their privilege log, doc. 64-3, which contains more than sufficient information to support defendants claims when combined with the supplemental explanation in the privilege log. *See e.g., Breland v. Levada EF Five, LLC.*, 2015 WL 12995098, *7 (S.D. Ala. April 30, 2015) (requiring disclosure of information when there was not both an affidavit and a *detailed* privilege log). Moreover, the privilege log was filed with the Court and is therefore subject to Fed. R. Civ. P. 11 which establishes that an attorney's signature on a filed document, "certifies that to the best of the

person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: . . . the factual contentions have evidentiary support." Likewise, plaintiff appears to acknowledge that Mr. Herring's affidavit is sufficient—at least in some respects—as he cites to it in his response to the amended privilege log.[4] *See, e.g.,* doc. 69 at 2. Accordingly, the Court concludes that the privilege log is sufficient at this time.

However, plaintiff identifies four specific instances where he believes the amended assertions of privilege remain factually insufficient. The first relates to communications between Meghan Dunn and Lois Adams (D072075, 072077, and 072078). Defendants contend these communications are privileged as:

> [d]iscussions between representatives of general and outside counsel about the status of the Bowman investigation and invoices for investigations. It is responsive to conversation found in D071976.

D071976, in turn states:

---

[4] The Court notes that plaintiff's new challenge to the privilege log, writ large, appears to be less a facial challenge to the sufficiency of the privilege and more a challenge to defendants' apparent difficulty complying with the requirements of this Court in providing sufficient information in a privilege log. To that end, plaintiff appears to request the disclosure of the documents as a sanction. However, sanctions require compliance with Fed. R. Civ. P. 11(b) which require that prior to filing such a request the party raising the issue give their opponent notice and an opportunity to cure.

7

> [t]his communication between the Executive Director of the Airport and Outside counsel is in reference to invoices to be paid to Catherine Bowman.

The Court concurs with plaintiff's position. There is no indication in that these emails contain legal advice. Rather, the facts proffered merely indicate a conversation regarding invoices and such conversations are not privileged. *Cardenas v. The Prudential Ins. Co. Of America*, 2003 WL 21302957, at *3 (D. Minn. May 16, 2003) (to support claims of attorney-client privilege and work product protection an attorney must state "that its billing records contain narrative descriptions of conversations between clients and attorneys, the subjects of legal research or internal legal memoranda, and activities undertaken on the client's behalf."); *Ehrich v. Binghampton City School Dist.*, 210 F.R.D. 17, 22–23 (N.D.N.Y. 2002) (discussing extent of attorney client privilege specifically in regards to nature of legal services performed); *Federal Trade Comm'n v. Cambridge Exch., Ltd.*, 845 F. Supp. 872, 874 (S.D. Fla. 1993) (billing records are not protected by the attorney-client privilege unless they describe the nature of the legal services provided or the trial strategy). Because the asserted privilege is inadequately supported, these documents are not protected. Accordingly, defendants are **DIRECTED** to disclose these documents to plaintiff within ten days from the date of this Order.

Plaintiff also contends that D048539 is not protected merely because an attorney is copied on the document. The entry for that document on the privilege log reads as follows:

> [t]his communication is a continuation of that in D048440. Sylvester Formey, the Chairman of the Board is discussing the facts of Jennifer Thomkins' claim with Dawoud Stevenson, the successor to Rauback on the DBE. The Thompkins suit involved the DBE.

D048440's entry on the privilege log states:

> [t]his is an email discussion between Greg Kelly and the commissioners in reference to a legal demand made by Jennifer Thomkins and her counsel. Kelly's discussion to the commissioners relays legal advice received from Brooks Stillwell about the appropriate response to the demand and next steps.

Reviewing these two documents in tandem, the Court is satisfied that defendants are not merely asserting a privilege on the basis of an attorney's presence on an email chain. Rather, the emails appear to be a conversation between representatives of a corporate client conveying relevant legal information and advice from counsel.

As the Northern District of Georgia found in, *Davita*, 301 F.R.D. at 681,

> simply because a communication is made between two corporate employees, neither of whom are attorneys, that fact is not determinative of whether that communication primarily involves business advice rather than legal advice for purposes of applying the attorney-client privilege to that

> correspondence. To conclude otherwise would result in a somewhat absurd finding that a document generated for purposes of obtaining and/or assisting in the transmission of legal advice would not only lose its privileged character, but would be artificially viewed as primarily a business communication merely because the author and recipient were not attorneys.

*(citing In re Denture Cream Products Liab. Litig.*, 2012 WL 5057844, at *13 (S.D. Fla. Oct. 18, 2012); *see also In re Vioxx Products Liab. Litig.*, 501 F. Supp. 2d 789, 811 (E.D. La. 2007) (finding that privilege applies not only to communications between corporate employees and corporation's counsel, but also to communications among corporate employees discussing or transmitting counsel's advice); *Weeks v. Samsung Heavy Indus. Co.*, 1996 WL 341537, at *4 (N.D. Ill. June 20, 1996) ("A privileged communication does not lose its status as such when an executive relays legal advice to another who shares responsibility for the subject matter underlying the consultation. Management personnel should be able to discuss the legal advice rendered to them as agents of the corporation.") (internal citations omitted)). In this case, the Court is satisfied that the communication between corporate representatives here was for the purpose of discussing legal advice rendered to them as agents of the corporation. As a result, the Court will not require the disclosure of that document.

## II. The Attorney-Client Privilege Waiver Dispute.

Plaintiff also objected to the Court's prior order determining that defendants had not waived the attorney-client privilege as to the timing of plaintiff's termination. Doc. 68. Plaintiff argues that defendants have asserted a factual claim regarding the timing of plaintiff's termination by arguing that he was terminated on January 31, 2018 rather than in May of 2017. *Id.* at 9-10. They argue that unless defendants are "willing to concede that Mr. Rauback has established the causal connection element of his prima facie case for his various retaliation claims, there is no doubt but that Defendants have 'assert[ed] a factual claim the truth of which can only be assessed by examination of a privileged communication.'" *Id.* at 10.

Plaintiff's prior brief argued that "the assertion of certain affirmative defenses by Defendants in the Answer," meant that defendants had waived the attorney-client privilege. Doc. 58 at 6. The Court determined that the defense of causation in defendants answer was not an "affirmative defense." To the extent the Court's prior order was unclear, the Court also determined that the assertion of the defense did not inject a "new factual issue" in to the case. When plaintiff was fired was, and remains, a question of fact which plaintiff introduced by filing the suit.

11

Plaintiff does not contest that it is his burden to prove the date of his termination. *See* doc. 68 at 10 *supra*. Defendants' Answer denying an element of plaintiff's claim does not introduce a *new* factual issue into the case as *causation was a fact issue to begin with*.

Even if it did, the Court does not accede to plaintiff's argument that the only way to assess the reasons for Mr. Rauback's termination is by examination of a privileged communication. Plaintiff has not explained why an examination of the reasons for Mr. Rauback's termination could not occur through depositions of defendant's non-attorney witnesses, written interrogatories, or other traditional methods of discovery directed to the defendants. Plaintiff's main argument that the Court should allow them to "peek" behind the curtain of the attorney-client privilege appears to be based on the fact that defendants employed attorneys during the run-up to plaintiff's termination. This is simply not enough at this stage to warrant abrogating the privilege.

Finally, the Court notes the following. The operative complaint in this case remains the one that was removed to this Court on July 13, 2018. Doc. 1-2. While plaintiff requested the opportunity to supplement his complaint, doc. 18—an opportunity which was granted in part by this Court, docs. 39 & 44—no amended complaint was ever filed. The

operative complaint does not plead that plaintiff was indeed fired in May of 2017. Rather, the complaint states that "[o]n or about May 15, 2017, Mr. Kelly placed Mr. Rauback on involuntary administrative leave without any reason." Doc. 1-2 at 11. It then states that, on or about May 15, Mr. Kelly called a meeting "and told Mr. Rauback that his employment relationship with the SAC was 'like a bad marriage,' and it was time 'to get a divorce.'" *Id.* The complaint then states that "[o]n or about May 25, 2017, Mr. Kelly appeared at Mr. Rabuack's home and delivered to him a proposed severance agreement referring to Mr. Rauback's 'termination date.'" *Id.* at 12. Thus, plaintiff never affirmatively pleaded the fact that he was terminated in May of 2017. Accordingly, defendant's assertion of causation does not *directly* conflict with plaintiff's statements as made in the Complaint.

## CONCLUSION

After review of the supplemental privilege log provided by defendants, the Court concludes that they have supported their claim to the privilege. To the extent this Order concludes the proceedings relating to the discovery dispute before the undersigned, it supersedes this Court's prior order. As a result, plaintiff may—if he so desires—file an amended objection to this Court's order within 14 days from the date of this order for review by the

13

assigned District Judge. Any amended objections should be complete and may not incorporate by reference any prior objections.

**SO ORDERED,** this <u>8th</u> day of August, 2019.

_____
CHRISTOPHER L. RAY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA